CANTOR, APPELLANT, *v.* BERKSHIRE LIFE INS. CO. ET AL., APPELLEES.

(No. 9974—Decided April 10, 1967.)

*Messrs. Goodman & Goodman,* for appellant.
*Messrs. Marble & Marble,* for appellees.

HOVER, J.   Plaintiff, appellant herein, sues for additional sums claimed due him as a retired agent of the defendant life insurance company (an appellee herein) under a so-called "career contract."

Approximately five years previously, in April of 1957, plaintiff also filed suit on the same contract against the same defendant insurance company claiming sums due him by way of an anticipatory breach by the insurance company of the career contract. The issue raised in that litigation was whether the status of the plaintiff as a full-time career agent could be terminated without specified cause by the insurance company after the company had agreed to  what amounted to plaintiff's retirement. The issue was adjudicated in plaintiff's favor, *Cantor* v. *Berkshire Life Ins. Co.,* 171 Ohio St. 405, to the extent that certain retirement benefits (known as continuity credits) due under the retirement proposal could not be divested by the termination of plaintiff's agency subsequent to the effective date of benefits due under the career contract. The effective date of such benefits and, accordingly, plaintiff's rights thereto was January 17, 1957, and his subsequent discharge as an agent of any sort, full-time, quota or otherwise, on April 21, 1957, would not divest him of the career contract benefits already vested.

The contract provided that in the event of termination by the company without cause the only sums due the agent would be those generally described as renewal premium credits or ordinary commissions as set out in Section 9, B, Schedule A, Column 2 of the contract. Amounts payable under this column were due plaintiff in any event. In *Cantor* v. *Berkshire Life Ins. Co.,* 171 Ohio St. 405, the Supreme Court determined that "* * * under the contract, plaintiff's retirement rights [since the rights had vested prior to discharge] would be determined from the payments

he received in 1958 both from commissions and from 'personal continuity credits' "—that is, Columns 3, 4 and 5 of the above contract provision.

That holding was pursuant to a contract provision that upon the effective date of retirement as a career agent the payments due the agent would never be less than a fixed percentage of the total of Columns 2, 3, 4 and 5 for the calendar year following the date of retirement. In respect to this plaintiff, this figure would be 60 per cent of the total sums due him for the year 1958, so that as provided in the contract this percentage of the credits following the calendar year after retirement would become a "floor" below which the annual amount to which the retired agent was entitled would not drop irrespective of the payments otherwise due by the retirement formula.

The order of the Supreme Court in the above cited litigation noted that the parties had stipulated the amount due the plaintiff in the event his retirement benefits vested prior to the termination of his agency. The court ordered final judgment in his favor for this amount. Pursuant to this judgment and an accompanying stipulation, plaintiff agent received from the insurance company the sum of $19,220.25 by way of principal, plus interest, for a total received by him of $23,740.85. This figure represented the amount due agent Cantor under the career contract for "personal continuity credits" during the balance of his anticipated life based upon a twelve-year expectancy.

Plaintiff now seeks in the court below additional sums claimed due him by virtue of Column 2 payments, "normal commission renewals," and by virtue of the allegations that the proper year for determining the "floor" figure applicable to the contract is 1957 rather than 1958, and that he has a thirteen-year instead of a twelve-year life expectancy. Both of these allegations are bottomed upon the belief that retirement rights became vested as of the date of application for benefits, that is September 1956, and upon a one-year greater life expectancy. If the first allegation is true, then the "floor" would be determined by total commissions received during 1957 rather than

1958; the anticipatory breach of the contract would cover a thirteen- rather than a twelve-year period; and the fact that the agent's employment was terminated without cause in 1957 would be of little or no consequence.

With this viewpoint we cannot agree. The Supreme Court has determined in the companion case above that the retirement date was January 17, 1957, and that the plaintiff's rights became vested as of that date. The calendar year following the date of retirement, that is 1957, is obviously 1958, and such year, accordingly, determines the "floor." The Supreme Court decision above obviously assumes, and correctly so, 1958 to be the critical year (page 406).

Plaintiff now claims, however, in addition, that because of his discharge by the company in April of 1957 he was prevented from earning possible additional sums during 1958, thus increasing the ultimate "floor" even if figured on that basis. Aside from being totally speculative, this allegation ignores the fact that nowhere, either in the contract or in the decision of the Supreme Court partially interpreting it, is the employer prohibited from terminating whatever relationship it may have had with the employee. The Supreme Court did not hold, nor did the court below, nor do we, that upon the effective date of the retirement contract, or any other contract, the plaintiff here was entitled as of right to a continuance of some or any form of his agency with the company.

It follows that plaintiff's minimum lifetime payments under the retirement plan would be determined by the total credits due him for the calendar year 1958, at which time he had a life expectancy of twelve years; and, when he chose to anticipate a partial breach of the contract by receiving an agreed sum paid on the basis of his total life expectancy rather than upon a year-to-year basis when due, the exercise of this option by the plaintiff also determined the basis upon which amounts still due him should be paid.

The company has at all times paid to plaintiff amounts due in full when and as they accrued arising from normal

renewal credits which, according to the evidence received in the trial, had by 1966 declined to the infinitesimal sum of $2.04, even though the life expectancy had not yet expired.

In the trial court the insurance compapny filed three defenses: first, a general denial; second, that the matter was *res judicata* because of the previous litigation; and, third, that if *res judicata* did not apply the plaintiff had already received full payment of all sums due him. After overruling summary judgments requested by both parties, apparently on the theory that any doubts as to the entitlement of a summary judgment should be construed against the movant, the court below proceeded to trial and, after the hearing of extensive testimony, rendered judgment for the defendant insurance company.

This court will not attempt to analyze the reasons given in the opinion of the court below for reaching the conclusion it reached. Suffice it to say, whether the doctrine of *res judicata* was properly applied to the entire contract by virtue of the previous litigation or not, it is not in dispute that the company has paid to the plaintiff, in full, all sums not included in the previous litigation.

The third defense in the court below alleges payment in full of sums due the plaintiff under the contract. Reference to the record in this respect indicates the following sums paid the plaintiff under contract Column 2, ordinary commissions totalled as of the time of trial, $8,620.43. The amount due plaintiff under this provision for the year, 1966 is $2.04. At that time plaintiff's life expectancy of twelve years still had two years to run. On the basis of those two years, the amount due him would be less than $2 additional for the years not yet considered, that is, 1967 and 1968.

The amount due plaintiff in 1958, the "floor" year, was $3,120.84; sixty per cent of this figure is $1,872.50. This then became the amount under which payments to the plaintiff would not drop, according to the contract. This "floor" was reached in 1961, at which time the plaintiff would have been entitled to receive $1,517.67 which,

obviously, is less than the "floor" figure derived from 1958 payments. Under the contract, payments were due the plaintiff as follows: 1957, $4,484.46; 1958, $3,120.84; 1959, $2,908.57; 1960, $2,621.74; 1961, $1,872.50,—that is, the "floor," instead of the lesser figure otherwise due for that year. This latter figure, under the anticipatory breach which plaintiff claimed successfully and correctly in the previous litigation extended for an additional eight years to equal the twelve-year life expectancy of the plaintiff, equals the total amount to become due plaintiff under the contract. This is $13,135.61 for the years itemized above, plus eight years of the "floor" figure at $1,872.50, thereby equaling a total of $28,115.61.

Against this total due, the plaintiff has received $23,-740.85 previously paid. This sum includes $19,220.25 of principal due for the anticipatory breach. He has received, in addition thereto by the date of the trial in the court below, the sum of $8,620.43; a total of $27,840.68, exclusive of interest, as against the total due for the anticipatory breach over the twelve-year life expectancy of the entire contract, of $28,115.61.

Taking into consideration the fact that the total sum due plaintiff at the end of his twelve-year life expectancy includes the payment of $19,220.25 in a lump sum without commutation for prepayment in the fourth year of the contract indicates rather conclusively that plaintiff has been well and adequately paid according to the interpretation of the career contract most favorable to him; and the third defense of the defendant insurance company claiming payment in full, whether made by mistake, miscalculation, or not, is well taken. The sum due plaintiff under the contract has been paid in full, and the decision of the court below is, accordingly, affirmed.

*Judgment affirmed.*

LONG, P. J., and HILDEBRANT, J., concur.